# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MELISSA GARRETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 04 C 8309 |
| ) | Judge George M. Marovich |
| RENTGROW, INC. and APARTMENT ) | |
| INVESTMENT MANAGEMENT COMPANY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Melissa Garrett ("Garrett") filed a three-count complaint against defendants RentGrow, Inc. ("RentGrow") and Apartment Investment and Management Company ("AIMCO"). In Counts I and II of her complaint, Garrett asserts that RentGrow violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, and the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act" or "ICFA"), 815 ILCS § 505/2. In Count III, Garrett asserts that AIMCO violated the Illinois Consumer Fraud Act. Defendant AIMCO moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing plaintiff's claim against it. For the reasons set forth below, the Court grants AIMCO's motion to dismiss.

## I.   Background

For purposes of this motion to dismiss, the Court takes as true the allegations in the complaint. As alleged in the complaint, the relevant facts are as follows. AIMCO, a corporation organized as a real estate investment trust, is a substantial owner/operator of apartment properties throughout the United States. AIMCO managed, and may also have owned, a federally-

subsidized apartment complex commonly known as Continental Plaza Apartments ("Continental"). Continental's management subscribed to and utilized an information service provided by RentGrow, a corporation engaged in tenant screening for owners and/or managers of multifamily apartment buildings. RentGrow compiles tenancy history data, including incidents, evictions, etc., on individuals seeking apartments, at the request of owners and/or managers of such apartments.

Garrett was interested in living in an apartment at the Continental. It offered better living conditions, security and maintenance than the apartment in which she was then living. Also, because units at the Continental were federally subsidized, living there would have reduced her rent and utility expenses. Thus, in 2003, Garrett applied and was wait-listed for an apartment at Continental.

In early August 2003, Continental's management pulled Garrett's application from the waiting list and sent her a letter indicating that she need only complete the application process at Continental to secure an apartment. After Garrett completed her application, Continental's management obtained a report from RentGrow. The RentGrow report stated that an eviction judgment had been entered against Garrett in Kankakee, Illinois in December 2002. Continental's management then sent Garrett a letter, dated August 20, 2003, rejecting her application for an apartment in the building.

Garrett maintains that Continental's rejection of her application was based solely on this RentGrow report. Garrett alleges that Continental stated "previous landlord history" as the cause for her denial in the August 20th letter, as well as in a subsequent conversation she initiated with Continental's management. According to Garrett, during this conversation, a representative of

Continental's management told her that the "previous landlord history" consisted solely of the Kankakee eviction detailed in the RentGrow report.

After receiving the August 20th rejection letter, Garrett informed RentGrow that she never resided at the property listed in the Kankakee case and was never sued for eviction from that property. Garrett claims that she then provided RentGrow with evidence supporting her position and contradicting the information detailed in its report. This evidence indicated that she resided in Chicago at the time in which she is claimed to have been evicted from the Kankakee property. Garrett maintains that RentGrow did not change its report on her and that Continental's management continued to rely on the tenancy history provided by RentGrow despite her objections to its accuracy.

Ultimately, Garrett was unable to obtain an apartment at the Continental complex. Garrett asserts that AIMCO committed an unfair practice, in violation of the Illinois Consumer Fraud Act, by refusing to re-examine or reverse its denial of her application after she had demonstrated that the basis for denial was inaccurate.

**II.    Standard on a motion to dismiss**

The Court may dismiss claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). The purpose of a motion to dismiss under this Rule is to test the sufficiency of the complaint, not to rule on its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). On a motion to dismiss, the "issue is not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### III. Discussion

In support of its motion to dismiss, AIMCO first argues that the plaintiff does not adequately plead an Illinois Consumer Fraud Act claim in that she fails to allege an unfair practice. Next, AIMCO argues that the plaintiff fails to allege intent.

The Illinois Consumer Fraud Act is a "regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416-417 (Ill. 2002). Specifically, chapter two of the Act prohibits unfair methods of competition and unfair or deceptive acts or practices used or employed in the conduct of any trade or commerce. 815 ILCS § 505/2.

To successfully state a claim under the Illinois Consumer Fraud Act, a plaintiff must allege: (1) a deceptive act or unfair practice by the defendant; (2) that the defendant intended that the plaintiff rely on that act or practice, or intent by the defendant to deceive, defraud, or be unfair to the plaintiff; (3) that the deception or unfair practice occurred in the course of conduct involving trade and commerce; and (4) that the deceptive act or unfair practice proximately caused the plaintiff's injury. *Jenkins v. Mercantile Mortgage Co.*, 231 F. Supp.2d 737, 747 (N.D. Ill. 2002); *Krause v. GE Capital Mortgage Servs., Inc.*, 314 Ill. App. 3d 376, 731 N.E.2d 302, 311 (2000).

### A. Failure to allege an unfair practice

An act or practice is "unfair" under the Illinois Consumer Fraud Act if (1) the practice, without having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise; (2) it is immoral, unethical, oppressive, or unscrupulous; (3) it causes substantial injury to consumers ("*Robinson* factors"). *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417-18, 775 N.E.2d 951, 960-61 (2002). The Illinois Supreme Court has explained that "all three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or to a lesser extent it meets all three." *Robinson*, 201 Ill.2d at 418 (citing *Cheshire Mortgage Services, Inc. v. Montes*, 223 Conn. 80, 106, 612 A.2d 1130, 1143-44 (1992)).

In this case, Garrett asserts that AIMCO's conduct constituted an unfair practice. Specifically, Garrett claims that the refusal of Continental's management to re-examine or reverse its denial of her application constituted such an unfair practice. Although AIMCO, through Continental management, controlled the success of Garrett's application, AIMCO's refusal to re-examine or reverse its denial does not support an unfair practice claim because it does not satisfy the *Robinson* factors for measuring unfairness.

#### 1. Offends public policy

A practice, without having been previously considered unlawful, offends public policy if it violates a standard of conduct set out by an existing statute or common law doctrine that typically governs such situations. *See, e.g., Robinson*, 201 Ill. 2d at 421 (finding no offense to public policy in Toyota's leasing charge disclosure practices because they met the standards set out by the Truth in Lending Act); *Carroll v. Butterfield Health Care, Inc.,* 2003 U.S. Dist.

LEXIS 19287, at *9 (N.D. Ill. Oct. 29, 2003) (finding no offense to public policy in nursing home's personal guarantee of payment for admission requirement despite its prohibition by Medicaid Act because Act did not provide for private right of action); *Ekl v. Knecht*, 223 Ill. App. 3d 234, 585 N.E.2d 156, 163 (1991) (finding a plumber's practice of demanding unreasonable payments and threatening to undo repairs after commencing work offended common law doctrine governing contracts formed under duress and coercion).

In this case, AIMCO's conduct does not offend public policy. Unlike *Robinson* and *Carroll*, Garrett fails to point to any established statute or common law doctrine regarding the evaluation of apartment rental applicants or the utilization of information services in making rental determinations. Accordingly, the alleged conduct does not satisfy the first of the *Robinson* factors. Thus, AIMCO's practice does not offend public policy as considered in measuring unfairness.

### 2. Is immoral, unethical, oppressive or unscrupulous

A practice may be considered immoral, unethical, oppressive, or unscrupulous if it imposes a lack of meaningful choice or an unreasonable burden on the consumer. *See, e.g., Robinson*, 201 Ill. 2d at 419-20 (finding no immoral or oppressive conduct based on plaintiff's ability to lease a car from another provider and the reasonableness of incremental fees included in pricing); *Ekl*, 585 N.E.2d at 163 (finding that plumber's threats to stop work, undo work already completed, and turn off plaintiffs' water if not paid an "outrageous" fee was oppressive, unscrupulous and coercive because of plaintiffs' lack of choice and the unreasonableness of charges).

In this case, AIMCO's conduct does not constitute immoral, unethical, oppressive, or unscrupulous behavior. Like *Robinson*, there is no oppressive or unscrupulous conduct involved because Garrett could have sought subsidized housing elsewhere. Although the Continental represented Garrett's ideal, Garrett does not allege that there was an utter lack of meaningful choice or any coercion which forced her to seek an apartment only in the Continental. Thus, plaintiff fails to allege immoral, unethical, oppressive, or unscrupulous conduct.

### 3. Causes substantial injury to consumers

A practice causes substantial injury to consumers if it causes significant harm to the plaintiff and has the potential to cause injury to a large number of consumers. *See, e.g., Carroll*, 2003 U.S. Dist. LEXIS 19287, at *9-10 (finding plaintiff's injury of garnished wages to settle personal guarantee not substantial enough); *Ekl*, 585 N.E.2d at 163 (plumber's threats to stop and undo work if he was not paid a large fee caused plaintiffs substantial injury because (a) they were deprived of bargaining power and forced to pay an unreasonable incremental amount, and (b) it could cause similar substantial injury to other consumers).

In this case, AIMCO's conduct does not and would not cause substantial injury to consumers. AIMCO's reliance on information provided by RentGrow and decision not to review candidates' individual tenancy histories does not cause substantial injury to consumers generally because it relates only to those few consumers who have potentially errant information in their reports. Unlike *Ekl*, where the plumber could extract excessive fees in any similar situation, AIMCO's practice would only apply to a small subset of applicants who disputed an entry in their records. Thus, plaintiff has failed to allege conduct which causes substantial injury to consumers.

Because Garrett fails to allege an "unfair practice," the Court concludes that Garrett does not state a claim under the *Illinois Consumer Fraud Act* against AIMCO.

### B. Failure to allege intent

Additionally, even if Garrett's allegations against AIMCO met the criteria of an unfair practice, she must still allege the second prong of an ICFA claim, intent. To satisfy this requirement, a plaintiff must allege either intent by the defendant that the plaintiff rely on that act or practice, or intent by the defendant to deceive, defraud, or be unfair to the plaintiff. *Krause*, 731 N.E.2d at 311.

In this case, Garrett fails to allege that AIMCO had an intent to deceive, defraud, or be unfair to her. In fact, Garrett does not even allege that AIMCO knew that the information contained in the RentGrow report was inaccurate. Accordingly, Garrett fails to state a claim under the Illinois Consumer Fraud Act.

## IV. Conclusion

For the reasons set forth above, the Court grants AIMCO's motion to dismiss Count III, plaintiff's only claim against it. Plaintiff's third count against defendant AIMCO is dismissed without prejudice, and plaintiff is granted 28 days to file an amended complaint.

ENTER:

_____
George M. Marovich
United States District Judge

DATED: 07/01/2005